UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL CASE NO. 09-7063-KSF-CJS
CRIMINAL NO. 06-183-KSF-CJS

UNITED STATES OF AMERICA　　　　　　　　　　　　　　　　　　　　　　PLAINTIFF

v.　　　　　　　　**REPORT AND RECOMMENDATION**

WILLIAM COOK　　　　　　　　　　　　　　　　　　　　　　　　　　　　DEFENDANT

\* \* \* \* \* \* \* \* \* \*

On February 5, 2009, Defendant William Cook (Cook) filed a Motion to Correct, Set Aside or Vacate Sentence under 28 U.S.C. § 2255. (R. 65). The United States filed a Response (R. 69), to which Cook filed a Reply (R. 70). On January 12, 2010, Cook filed a motion the Court construed as a Supplemental Motion to his § 2255 motion. (R. 71). The United States filed a Response to the construed Supplemental Motion (R. 80), and Cook filed a Reply (R. 79 & 81). Pursuant to local practice, this matter has been referred to the undersigned for the preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Having considered all relevant documents before the Court, for the reasons set forth below, it is recommended that Defendant's § 2255 motion be **denied.**

I.　　　**BACKGROUND**

On November 30, 2006, a federal grand jury returned an Indictment charging Cook with knowingly transporting a 14-year-old female from Ohio to Kentucky with the intent that she engage in sexual activity, in violation of 18 U.S.C. § 2423(a). (R. 1).

Cook's jury trial commenced on March 13, 2007, and concluded on March 14, 2007, when the jury returned a verdict of guilty. (R. 29 & 34). The evidence at trial established that Cook transported his 15-year-old daughter and her 14-year-old cousin, Brandy, from Lucasville, Ohio, to a hotel in Georgetown, Kentucky, where he had sex with Brandy. (R. 55, at 64-73). His daughter testified that a few days before the trip, Cook told her that he was separating from her mother and that he was "falling for" Brandy. (R. 55, at 104). Cook asked his daughter if she wanted to go with him to start a new life and told her he wanted her to ask Brandy to come too. (*Id.*)

On October 16, 2005, Cook drove from Ohio to Kentucky with his daughter and Brandy. His daughter testified she thought they were going to Kentucky to talk to her Uncle, Cook's brother, about staying with him when they moved. (R. 55, at 115). Brandy testified that Cook told her he was taking them to a mall. (R. 55, at 88-89). At 3:00 p.m., after driving for several hours, Cook checked into a hotel in Georgetown, Kentucky, just twenty minutes from his brother's house. (R. 55, at 123-24). Brandy testified that after hanging out and watching television, she went to bed lying next to her cousin but when she woke up, her cousin was in the other bed and Cook was in bed with her. Brandy testified that Cook raped her. (R. 55, at 72-74).

During closing arguments, Cook's counsel admitted her client had sex with the 14-year-old victim, but explained the issue was whether this was a federal case, which required that the significant or motivating force behind Cook's transporting of Brandy to Kentucky was for the purpose of having sex with her. Counsel argued that the evidence did not support such a finding. The jury disagreed and, after deliberating for less than two hours, returned a verdict finding Cook guilty.

On June 22, 2007, Cook appeared before the Court for sentencing. The Court acknowledged that the Guidelines suggested a sentencing range of 292 to 365 months of incarceration. Defendant was sentenced to a 292-month term of imprisonment, to be followed by a life term of supervised release. (R. 46 & 54).

On July 2, 2007, Cook appealed his conviction and sentence. (R. 49). Again, Cook did not dispute that he knowingly transported Brandy across state lines, that sexual activity occurred, or that she was under the age of 18. Instead, he argued that there was insufficient evidence that his intent in traveling across state lines was to engage in sexual activity. On July 29, 2008, the Sixth Circuit affirmed the conviction and sentence on direct appeal, stating that a rational juror could have inferred from the evidence that Cook transported Brandy from Ohio to Kentucky with the intent to engage in sexual activity with her. (R. 58). Cook did not file a petition for certiorari.

On February 5, 2009, Cook filed the pending motion pursuant to 28 U.S.C. § 2255 (R. 65), presenting three grounds for relief: ineffective assistance of counsel for failing to object to an incorrect presentence investigation report; ineffective assistance of counsel for counsel's failure to inform him of a plea offer from the Government, and a violation of his constitutional rights because his jury was "all Anglo."

On January 12, 2010, while his § 2255 motion was pending, Cook filed a construed Supplemental Motion to Vacate, Set Aside or Correct Sentence under § 2255. (R. 71). This Supplemental Motion asserts additional claims including that: Cook's Motion for Judgment of Acquittal was wrongfully denied; the prosecutor improperly influenced the testimony given by some of the prosecution's witnesses; and additional claims of ineffective assistance of counsel based upon counsel's failure to protect his interest during jury selection, her failure to object to the introduction

3

of DNA evidence that was not maintained in a proper chain of custody, her failure to call certain witnesses on his behalf, and her defamatory statements about him in her closing argument. Although Cook makes new arguments in this Supplemental Motion, he has not submitted any new evidence.

## II. ANALYSIS

The statute governing Cook's motion to obtain habeas relief requires that Cook demonstrate his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To succeed on a § 2255 motion alleging constitutional error, Cook "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States,* 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993)). To prevail on a § 2255 motion alleging a nonconstitutional error, Cook "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States,* 368 U.S. 424, 428 (1962)).

Where, as here, a defendant files an amended or supplemental § 2255 motion more than one year after his conviction became final, the claims that differ significantly from those raised in his original timely motion do not "relate back" to his original motion. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005). Instead, only those claims that "arise from the same core facts as the timely filed claims" will relate back, and "not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657. Thus, only the following claims of

ineffective assistance of counsel: failure to protect his interests in jury selection, failure to object to an incorrect presentence investigation report, and failure to communicate a plea offer; along with his claim for violation of his right to a fair and impartial jury, are timely made pursuant to *Mayle*. Nevertheless, even if the additional claims were properly before the Court, they too would fail, as explained below.

      A.      **Claims of Error in Jury Selection, Conviction and Sentencing**

Cook argues that his jury selection, conviction, and sentence were in violation of his constitutional rights. Specifically, Cook maintains that his jury was made up of all Anglo-Saxon jurors, thus depriving him of his right to "an ethnical variety." He also argues the District Court erred in not granting his Motion for Judgment of Acquittal because the Government did not present sufficient evidence to support a conviction. In addition, he asserts that the prosecutor improperly influenced the testimony of some of the prosecution witnesses. Further, Cook maintains that the District Court erred in rendering his sentence because it relied upon an incorrect presentence investigation report. On direct appeal, Cook raised only the insufficiency of the evidence claim. (*See* R. 58) (Sixth Circuit Order of July 29, 2008, entered in *United States v. Cook,* No. 07-5823, which Order affirmed Cook's conviction).

A § 2255 motion is not a substitute for a direct appeal. *Bousley v. United States,* 523 U.S. 614, 621 (1998) (citing *Reed v. Farley,* 512 U.S. 339, 354 (1994)). When a defendant raises a claim under § 2255 that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless he can show cause for his failure to raise the claim earlier in a direct appeal, and actual prejudice stemming from the alleged violation. *See id.* at 622; *Farley,* 512 U.S. at 354. A defendant must explain the reason the issue was not addressed on appeal as well

as the harm done to him, in order to establish prejudice. *United States v. Frady,* 456 U.S. 152, 168 (1982). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Id.* at 166.

Cook argues that he thought his appellate counsel would raise the issue of his sentence on appeal, but he makes no attempt here to explain why he did not raise the issue of improper jury selection or the Court's alleged use of an incorrect presentence investigation report with either the District Court or on direct appeal. Therefore, each of these claims to the extent now separately asserted by him and not raised on direct appeal is barred, as Cook fails to come forward with the required showing under *Bousley v. United States.* These issues will be addressed below, however, as claims for ineffective assistance of counsel.

Cook's insufficiency of the evidence claim also fails because the Sixth Circuit has already reviewed this claim and found that the evidence was sufficient to sustain Cook's conviction. Cook "may not use [his] § 2255 motion 'to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.'" *United States v. DeGroat,* 102 F. App'x 956, 959 (6th Cir. 2004) (quoting *Jones v. United States,* 178 F.3d 790, 796 (6th Cir. 1999)). Here, Cook does not argue that highly exceptional circumstances exist or that there has been a change in the law. Accordingly, Cook cannot relitigate the issue here. *See id.; Stephan v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974).

### B. Claims of Ineffective Assistance of Counsel

The Sixth Circuit has held that a post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel. *United States v. Crowe,* 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)). Cook alleges that

his counsel was ineffective because she: (1) failed to inform him of a plea offer; (2) failed to protect his interest in obtaining a fair and impartial jury; (3) failed to object to the introduction of DNA evidence that was admitted despite a break in the chain of custody; (4) failed to call certain witnesses he requested testify on his behalf; (5) made defamatory statements about him during her closing argument; and (6) failed to object to an incorrect presentence investigation report.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established the two-part test for evaluating claims of ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a defendant must first demonstrate that his counsel's performance was deficient. *Id.* This requires Cook to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To demonstrate this first prong, Cook must point to specific errors in counsel's performance, and the reviewing court must subject the allegations to rigorous scrutiny, determining "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690. The court must "indulge a strong presumption" that counsel's conduct was reasonable and might be considered sound trial strategy. *Id.* at 689-90 (citation omitted). "Judicial scrutiny of a counsel's performance must be highly deferential." *Id.* at 689. "[E]very effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The second prong of the test requires a defendant demonstrate that the deficient performance prejudiced his defense. *Id.* at 687. This requires Cook to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694. Cook

must prove both prongs of the two-prong test to carry his burden of establishing that his counsel's assistance was constitutionally ineffective. *See id.* at 697.

### 1. Ineffective Assistance of Counsel for Failing to Notify of Plea Offer

Cook argues that his counsel was ineffective for failing to notify him of the Government's plea offer. Counsel states in her affidavit that she has a specific recollection of reviewing the written plea agreement with Mr. Cook. (R. 69-1, at ¶ 5). Counsel also states that her time records reflect the work she did on the plea agreement, including reviewing the plea agreement on February 23, 2007; conducting research on the applicable Guideline range; and meeting with Cook for almost three hours on March 5, 2007, to discuss the proposed plea agreement and the consequences of going to trial. (*Id.*). Her records further reflect that on March 5, 2007, she called the prosecutor and the Court to relay Mr. Cook's decision to reject the offer and proceed with trial. (*Id.*). The Court has reviewed counsel's time records, and finds that they support counsel's recollection. (R. 83-1).

In addition, the record also supports counsel's recollection. (R. 22, n. 4). In the Government's Response to Defendant's Motion in Limine, the Government explained its witness interviews were delayed because of its belief that a plea agreement might be reached. "At the request of the Defendant, the United States provided the Defendant with a plea agreement on February 22, 2007. Defense counsel did not contact the United States until mid-afternoon on Monday March 5, 2007, to state that the Defendant did not want to plead guilty." (*Id.*).

Cook's bare assertion in his motion, without any evidentiary support, that he was not informed of the plea offer until after the trial is contradicted by the record and counsel's affidavit. The Sixth Circuit has held that when a factual dispute arises in a § 2255 motion, "the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true

8

because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (citing *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007), *cert. denied*, 522 U.S. 1217 (2008)) (finding evidentiary hearing not required since record refuted petitioner's claim that counsel did not inform him of plea offer).

Here, similar to *Amr*, the record refutes Defendant's factual allegations, thus making an evidentiary hearing unnecessary. As previously stated, the record before the district court consisted of a declaration by Defendant's attorney stating that she has a specific recollection of discussing the plea offer with him and that her time records support her recollection. In addition, counsel's declaration is supported by facts set forth in a brief filed by the Government, which confirms the dates set forth in counsel's declaration. This information clearly contradicts Defendant's claim that his attorney failed to inform him of the plea offer. Moreover, there is nothing in the record to indicate that Defendant would have been able to prove his allegations at an evidentiary hearing. He has not identified any evidence, other than his own testimony, that he could present to support his claim. Therefore, an evidentiary hearing is not required.

In summary, Cook has failed to present any evidence that his counsel failed to inform him of the plea agreement. Therefore, his claim of ineffective assistance of counsel in this regard is rejected.

### 2. Ineffective Assistance of Counsel During Trial

Cook argues that his counsel was ineffective at trial because she failed to protect his interest in obtaining a fair and impartial jury. Specifically, Cook argues that he told his counsel that he wanted to keep five jurors, Jurors 192, 194, 202, 221 and 325, but they were not on his jury. He

9

claims he told counsel that one juror kept giving him "evil looks" during the trial, but he can't remember if it was Juror 226 or 195.

A review of the voir dire transcript reveals that one of Cook's preferred jurors, Juror 202, was stricken by the Court for cause because she had been a victim of sexual abuse. (R. 53, at 19). There is no evidence that Juror 221 was stricken by either party. Instead, it appears from the record that Juror 221 was not selected during the random draw. (R. 53, at 35).

Jurors 192, 194 and 325 were excluded from the final jury composition after peremptory challenges were made, but the record does not state which party, if either, exercised a peremptory challenge to exclude these jurors from the panel. Regardless, however, of whether Cook is arguing that counsel was ineffective for striking these jurors[1] or for failing to object to the Government's use of a peremptory challenge, such decisions are ones of trial strategy, which are presumed to be sound. *Harris v. Konteh*, 198 F. Appx 448, 454 -55 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 689). The Sixth Circuit has stated that "'counsel is accorded particular deference when conducting voir dire,' emphasizing that '[a]n attorney's actions during voir dire are considered to be matters of trial strategy.'" *Id*. at 455 (quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)). Moreover, even if Cook is arguing his counsel was ineffective for failing to object to the Government's exercise of its peremptory challenges on these jurors, Cook has not established any discriminatory purpose or intent that would render counsel's failure to object unreasonable. *Harris*, 192 F.3d at 586. Thus, Cook has not provided the Court with any facts to support his allegation that

---

[1] The Court notes that defense counsel's affidavit establishes she reviewed all of her challenges with Cook, and deferred to his decision on how to exercise the strikes. (R. 80-1, at ¶ 3).

these jurors were improperly excluded or that his counsel's omissions amounted to deficient performance.

Cook's claim that his jury was "all Anglo" and, therefore, violated his right to a jury of his peers, is not sufficient to argue his counsel was ineffective for failing to raise a *Batson*[2] challenge. In fact, the record reflects that counsel did raise the issue. (R. 53, at 37). The transcript of the voir dire proceeding evidences that there were two African American jurors in the jury pool: Jurors 194 and 204. (R. 53, at 33 & 37). Juror 204 asked to be excused because she had college finals that week. (R. 53, at 10-11). The Court found that the juror might not be attentive to the evidence if she were worried about her finals, and excused her for cause. (R. 53, at 33-34). Thereafter, defense counsel challenged the Government's use of a peremptory challenge to strike the remaining African American juror, Juror 194. (R. 53, at 37). The Court found the Government's stated reason, the juror's wife was a convicted sex offender, was a valid reason for striking this juror from the panel. (R. 53, at 37). Thus, there is no evidence that counsel's performance fell below a reasonable professional standard in this regard. To the contrary, the Court finds counsel diligently pursued the issue; the District Court simply found the Government had articulated a legitimate, non-discriminatory reason for striking the lone African American juror.

Cook also argues that his counsel was ineffective for not objecting to Juror 230 remaining on the jury after she admitted that she knew one of the witnesses. The record reveals that Juror 230

---

[2] *See Batson v. Kentucky*, 476 U.S. 79, (1986) (reaffirming that the Equal Protection Clause forbids a prosecutor from exercising peremptory challenges to strike jurors based upon their race); *United States v. Cecil*, ___, F.3d___, No. 08-5080, 2010 WL 3120027, at *3 (6th Cir. August 10, 2010) ("In order to establish an equal protection violation under *Batson*, the complaining party must first make a prima facie showing that the peremptory challenge was based on race." *(*citing *United States v. Jackson*, 347 F.3d 598, 604 (6th Cir. 2003)).

sent a note to the Court notifying that she had recognized a witness, the manager of the Econo Lodge in Georgetown, Kentucky, where Cook stayed with his daughter and Brandy during the trip at issue. (R. 53-2, at 142). The Court, in the presence of both counsel, questioned Juror 230 about the extent of her relationship with the witness. Juror 230 explained that she did not know the witness personally, but they had both worked at Wal-Mart for a couple of months together. Neither counsel had an objection to the juror continuing her service, and the Court found that there was no need to excuse the juror from her service, given the witness' limited testimony as a records custodian regarding the receipt for Cook's stay.

Cook has not established that his counsel's conduct regarding Juror 230's revelation that she recognized the manager of the hotel fell below a reasonable professional standard. Instead, the record provides that counsel asked that the juror be brought into the courtroom and questioned to be sure it would not "make a difference." (R. 53-2, at 142). Upon learning the limited nature of the relationship and considering the limited scope of the evidence provided by the witness, counsel acted reasonably in not objecting to the juror continuing with her service since their was no expression of actual bias. *See Bedford v. Webb*, No. 05-82, 2007 WL 3396498, at *7 (E.D. Ky. Nov. 13, 2007).

Cook also argues that he told his counsel that certain jurors were giving him "evil eyes," "evil looks" or "bad faces" during his trial, and that counsel was ineffective for not selecting impartial jurors. Counsel has provided an affidavit stating that although she and Cook observed and discussed jurors making negative facial expressions in Cook's direction during trial, especially during the victim's testimony, this was not observed during jury selection. (R. 80-1, at 2).

Under the Sixth Amendment, the longstanding Supreme Court standard for juror impartiality is as follows:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 723 (1961) (citations omitted). Cook has not presented any evidence that any of the jurors held any preconceived notions as to his guilt. Instead, he points only to some of the jurors' reactions to the evidence, which is not evidence of a preconceived opinion.

Further, his counsel states in her affidavit that she discussed her peremptory strikes with Cook, as is her normal practice, and deferred to his decision on how to exercise the strikes. (R. 80-1). Thus, there is no evidence that counsel's conduct in selecting the jury fell below a reasonable professional standard.

Cook also argues that his counsel was ineffective because she failed to object to the introduction of DNA evidence that was admitted despite a break in the chain of custody. The record demonstrates, however, that counsel filed a Motion in Limine seeking to exclude the DNA evidence on the grounds that there was a gap in the chain of custody, which the District Court denied after hearing oral argument. (R. 19, 24 & 52, at 58). Counsel is not ineffective simply because the District Court does not rule in Defendant's favor. Defendant does not present any evidence that Counsel's conduct in raising or arguing the issue was in any way deficient.

Further, Defendant contends that he had a intimate relationship with the officer that collected the DNA sample and he thinks this officer tampered with his sample. He argues that he told counsel about his relationship and his belief that the DNA sample had been compromised, but she failed to object. Again, however, the record belies Cook's assertion. (R. 52, at 58-60). Counsel did in fact raise the issue with the District Court, but agreed not to use the information in her opening statement,

13

and the Court deferred a ruling on the issue until such time as counsel anticipated raising the issue. Counsel further explains in her affidavit that she explored the issue and did not have any evidence to support the relationship, which the officer denied. Counsel stated that she "believed it would undermine [the] defense to further pursue the issue" and, therefore, she made a strategic decision not to pursue the issue at trial. (R. 80-1).

The Court finds that counsel diligently considered the issue and made a strategic decision not to raise the issue of a potential conflict of an investigating officer since there was no evidence to support Defendant's claim. The Supreme Court has cautioned that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, (1955)). Cook has not presented any evidence to overcome the presumption that this decision constituted sound trial strategy. Further, Defendant has failed to demonstrate that the allegedly deficient performance prejudiced the defense; that, but for the deficiency, the outcome of the proceedings would have been different. *Id.* at 694. Thus, Cook has failed to establish that his counsel's performance fell outside the wide range of professionally competent assistance on this point.

Cook further claims that counsel was deficient for failing to call certain witnesses on his behalf who would have testified that they were aware of Cook's longstanding relationship with Brandy. As counsel notes in her affidavit, however, the issue of whether Cook's sexual relationship with Brandy was consensual was not the key issue in the case. (R. 80-1, at 4). Instead, the issue was whether Cook's intent in bringing Brandy to Kentucky was for the purpose of having sex with her.

Cook argues in his Supplemental Reply that his witnesses would have established that he did not have sex with Brandy in Kentucky, but in Ohio. The only two people with Cook in the Kentucky hotel room, his daughter and Brandy, both testified to facts supporting a finding that Cook had sex with Brandy at the hotel. There were no other witnesses to what happened in the hotel room.

Further, the fact Cook may have had sex with Brandy in Ohio does not preclude a finding that he brought her to Kentucky for the purpose of having sex with her in Kentucky. The Court finds that even if, as Cook alleges, it was counsel's decision not to call these witnesses, refusing to introduce testimony that Cook may have had a longstanding relationship with Brandy in Ohio may have been sound trial strategy. Counsel explains in her declaration that it was a strategic decision not to introduce evidence of Cook's prior sexual relationship with Brandy because she believed such testimony may have been counterproductive in trying to prove that Cook did not bring Brandy to Kentucky for purposes of having sex. Counsel's decision not to bring undue attention to a prior sexual relationship between Cook and the 14-year-old victim does not fall below an objective standard of reasonableness, especially in light of the evidence that Cook checked into a hotel in the middle of the afternoon, and just miles from his intended destination. *United States v. Foreman*, 323 F.3d 498, 503-04 (6th Cir. 2003) (holding that whether to call a particular witness is one of counsel's strategic decisions that does not amount to ineffective assistance).

Lastly, Cook asserts that counsel made derogatory statements about him during her closing argument, which statements prejudiced the jury against him. Specifically, counsel stated:

> [L]adies and gentlemen of the jury. My client, William Cook, is not a good man. I told you that at the beginning, I'm telling you that now. And he knows I think that. That he had sex in any form or fashion with a 14-year-old girl is beyond my comprehension, I am certain that it is beyond yours. And I don't like my client, but I do love the law, and you promised me at the beginning of this case that you would

15

> honor the law. And there is a place for everything in the law. Some things are federal crimes and some things are state crimes. And we have in the United States the best jury system in the world in both our federal and state courts, and it's designed to convict people of appropriate crime in the appropriate place. And it falls to you as federal court jurors to make sure that the federal law is applied correctly. . . . It is difficult to be the lawyer in the case, and it's going to be difficult to be the juror in the case. . . . But your job is the same as mine, and that is to put aside your personal feelings about Mr. Cook and to go back and read the instructions that the Court gives you and to apply the evidence that you've heard. . . .
>
> And the issue in this case is not whether Mr. Cook committed first degree rape, forcible rape, or third degree rape, statutory rape, because the DNA evidence establishes that Mr. Cook had sexual intercourse with a 14-year-old. But that's not the issue for you. That's an issue for the state court and it's an issue that Detective Wilbers has made sure the state court will address because he's already filed charges in Scott County. The issue for you to decide is whether at the time Mr. Cook transported [Brandy] to Kentucky what was his motivating intent? Was his motivating intent that [she] would engage in illegal sexual activity with him? . . . What was Mr. Cook's purpose in going to Kentucky? . . .
>
> The Court will instruct you that the sexual activity need not be the only purpose of the trip, and certainly a trip can have more than one purpose. I acknowledge that. But the Court will also instruct you that it is not enough that the sexual activity was just a purpose of the trip, it has to be a significant or motivating purpose of the trip. In other words, the Court is going to instruct you that the sexual activity must have been not just incidental.

(R. 55, at 37-40). During her closing argument, counsel analyzed the evidence in great detail, emphasizing the purpose of the trip to Kentucky was so Mr. Cook could talk to his brother, who lived in Kentucky, not to have sex with Brandy.

It is well-established that a defendant's right to effective assistance of counsel extends to closing arguments. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *Cope v. United States*, 272 F. App'x 445, 448 (6th Cir. 2008). However, "counsel has wide latitude in deciding how best to represent a client," and courts must give deference to counsel's strategic decisions in how to present her closing argument to the jury "because of the broad range of legitimate defense strategy at that

stage." *Yarborough*, 540 U.S. at 5-6. "Judicial review of a defense attorney's summation is therefore highly deferential – and doubly deferential when it is conducted through the lens of federal habeas." *Id*. at 6.

Here, counsel mixed the negative statements about Cook's character with her argument that the jurors must put aside their personal feelings about Cook, as she had, and honor their commitment to follow the law. Council then carefully analyzed the evidence and diligently argued why the evidence supported the Defendant's theory of the case; this was a state crime, not a federal crime. The Court finds that counsel's use of negative statements about Defendant's character was a strategic choice to try to lessen the impact of the offensive behavior by acknowledging it and explaining why that was not the issue in the case. Thus, counsel's conduct was not professionally unreasonable and, therefore, does not constitute ineffective assistance of counsel.

In summary, the record in this case has been thoroughly reviewed, as have Defendant's contentions directed to the trial conduct of his counsel. The record evidences that Defendant was well represented at trial. Therefore, each of his claims of ineffective assistance of counsel in this regard fails.

### 3. Ineffective Assistance of Counsel During Sentencing

Cook argues that counsel was ineffective in failing to object to an incorrect presentence investigation report at sentencing. Specifically, Cook asserts that his presentence investigation report contained criminal charges and convictions for another individual named "William Cook," whose social security number is one number different from his own. Cook does not identify what charge(s) he alleges were improperly reported. His former counsel stated in her affidavit that her notes reflect the charges contained in paragraph 46 of the presentence investigation report were incorrectly

17

attributed to Cook instead of his cousin, but her notes do not indicate that he reported to her any other errors with the report.

To establish the ineffective assistance of counsel, Cook must show that his counsel's performance was deficient and that he was prejudiced by counsel's alleged errors. *See Strickland*, 466 U.S. at 687. Here, the District Court confirmed at sentencing that counsel had an opportunity to read and discuss the presentence report prior to sentencing. (R. 54, at 5). Even assuming the charges in paragraph 46 should not have been attributed to Cook, he cannot establish prejudice since no points were assessed for these charges in determining his criminal history category because the state court dismissed those charges. (R. 48, at 13). *See United States v. Stevens*, 851 F.2d 140, 145 (6th Cir. 1988); *Spearman v. Birkett*, 10 F. App'x 287, 288-89 (6th Cir. 2001) (Petitioner failed to establish prejudice for an ineffective assistance of counsel at sentencing claim where there was no indication sentencing judge relied on objectionable information contained in presentence report). Therefore, since Cook has not submitted any evidence that the District Court relied upon any alleged inaccuracies in sentencing him, he cannot establish actual prejudice and his claim of ineffective assistance of counsel claim in this regard fails.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, a district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a COA

in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Cook's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1) Defendant Cook's Motion to Correct, Set Aside or Vacate Sentence under 28 U.S.C. § 2255 and Supplemental Motion thereto (R. 65, 71) be **denied**;

(2) this matter be **dismissed** and **stricken** from the active docket of this Court; and,

(3) the issuance of a Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter.

Specific objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen (14) days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 7th day of September, 2010.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\habeas petitions\2255 ineffective assistance counsel\5-06-183 R&R.wpd